**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JEFFREY OLSON, | No. 24-6527 |
| *Plaintiff - Appellee,* | D.C. No. 2:18-cv-00360-DJC-JDP |
| v. | |
| FCA US, LLC, a Delaware Corporation, formerly known as Chrysler Group LLC, | OPINION |
| *Defendant - Appellant.* | |

Appeal from the United States District Court
for the Eastern District of California
Daniel J. Calabretta, District Court, Presiding

Argued and Submitted November 21, 2025
San Jose, California

Filed April 7, 2026

Before: Mary M. Schroeder and Michelle T. Friedland,
Circuit Judges, and Karen E. Schreier, District Judge.[*]

Opinion by Judge Friedland

---

[*] The Honorable Karen E. Schreier, United States District Judge for the
District of South Dakota, sitting by designation.

## SUMMARY[**]

### Arbitration

The panel affirmed the district court's denial of automobile manufacturer FCA US, LLC's motion to compel arbitration.

Jeffrey Olson entered a contract with a car dealership to lease a Jeep Grand Cherokee. The lease agreement contained an arbitration agreement with a delegation clause, which stated that questions about the scope of the arbitration agreement must be decided in arbitration. FCA was not a signatory to the lease agreement.

Olson was the named plaintiff in a federal class-action lawsuit against FCA, the Jeep's manufacturer, alleging defects in the headrest. FCA argued that because the arbitration agreement in Olson's lease agreement with the dealership contained a delegation clause, the district court had no authority to decide whether FCA could enforce the arbitration agreement and instead had to send that question to arbitration..

The panel held that FCA cannot compel Olson to arbitrate. With limited exceptions, non-parties to an arbitration agreement cannot enforce the agreement's terms against a signatory. Olson never agreed to arbitrate with FCA, and no exceptions to the general rule that only parties to an arbitration agreement can enforce it apply here.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel rejected FCA's argument that, even if it cannot enforce the delegation clause in Olson's arbitration agreement, the court should compel Olson to arbitrate his dispute with FCA. First, the plain language of the agreement does not require Olson to arbitrate any claims with FCA. Second, under California law, FCA cannot use equitable estoppel to enforce the arbitration agreement in Olson's lease.

## COUNSEL

Mark P. Chalos (argued), Kenneth S. Byrd, Christopher E. Coleman, and Amelia A. Haselkorn, Lieff Cabraser Heimann & Bernstein LLP, Nashville, Tennessee; Stuart C. Talley and Ian J. Barlow, Kershaw Talley Barlow PC, Sacramento, California; for Plaintiff-Appellee.

Brandon L. Boxler (argued), Klein Thomas Lee & Fresard, Richmond, Virginia; Fred J. Fresard, Klein Thomas Lee & Fresard, Troy, Michigan; for Defendant-Appellant.

## OPINION

FRIEDLAND, Circuit Judge:

In this case, an automobile manufacturer seeks to enforce a "delegation clause" in an arbitration agreement appearing in a contract to which the manufacturer was not a signatory.

Plaintiff-Appellee Jeffrey Olson entered a contract with a car dealership to lease a Jeep Grand Cherokee. An arbitration agreement within the contract contained a delegation clause, which stated that questions about the scope of the arbitration agreement must be decided in arbitration. Olson later became the named plaintiff in a federal class-action lawsuit against the Jeep's manufacturer, FCA US, LLC ("FCA"), alleging defects in the headrest. FCA was not a party to the lease agreement, but it nevertheless relied on that agreement in filing a motion to compel arbitration. FCA argued that because the lease agreement contained a delegation clause, the district court had no authority to decide whether FCA could enforce the arbitration agreement and instead had to send that question to arbitration. The district court rejected that argument and denied FCA's motion to compel arbitration. We affirm.

## I.

In 2018, Shawn Alger filed a putative class-action lawsuit in the United States District Court for the Eastern District of California against FCA. On behalf of himself and other individuals who owned or leased certain vehicles that FCA had manufactured, Alger asserted warranty and consumer protection claims under California law, based on alleged defects in the headrests of those vehicles. Specifically, Alger alleged that certain FCA-manufactured

vehicles with spring-loaded headrests designed to deploy during collisions have manufacturing defects that cause the headrests to deploy unexpectedly, potentially harming or distracting drivers.  The district court certified the class.  A few years later, the district court granted Plaintiffs' motion to substitute class member Jeffrey Olson as named Plaintiff.

Olson had signed an agreement with a car dealership, Autonation Chrysler Dodge Jeep ("the dealership"), when he leased the allegedly defective Jeep that served as the basis for his claims.  Olson's lease agreement includes an arbitration agreement.  In relevant part, the arbitration agreement states:

> By agreeing to this Arbitration Agreement you are giving up your right to go to court for claims and disputes arising from this Lease if you or we choose to arbitrate.
>    • You or we may choose to have any dispute between us decided by arbitration, and not by a court or by jury trial.
> . . . .
> At your or our election, any claim or dispute in contract, tort, statute, or otherwise between you and us or our employees, agents, successors or assigns that arises out of, or relates to your credit application, this Lease or any related transaction or relationship is to be decided by neutral, binding arbitration. Also, to the extent allowed by law, the validity, scope, and interpretation of this

6                    OLSON V. FCA US, LLC

> Arbitration Agreement is to be decided
> by neutral, binding arbitration.
>
> If you or we choose to arbitrate a claim or
> dispute, you and we agree that no trial by jury
> or other judicial proceedings take place.

The lease agreement defines the terms "you" and "your" as the lessee who signs the lease (Olson), and the terms "we," "our," and "us" as the lessor who signs the lease (the dealership) and its successors and assigns. FCA does not claim to be an employee, agent, successor, or assign of the dealership within the meaning of the agreement.

FCA moved to compel Olson to arbitration. FCA argued that the delegation clause in the lease's arbitration agreement—*i.e.*, the clause stating "to the extent allowed by law, the validity, scope and interpretation of this Arbitration Agreement is to be decided by neutral, binding arbitration"—required an arbitrator to decide whether Olson's claims against FCA are arbitrable. In the alternative, FCA argued that the court should itself interpret the arbitration agreement to mean that Olson's claims against FCA must be decided in arbitration.

The district court denied FCA's motion to compel arbitration, and FCA appealed.

## II.

"We review de novo the district court's denial of a motion to compel arbitration." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023) (citation modified).

## III.

Arbitration is a matter of contract. "Generally, the contractual right to compel arbitration 'may not be invoked

by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'" *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993)). But a litigant who is not a party to a contract containing an arbitration agreement may compel arbitration under that agreement if contract law in the relevant jurisdiction would allow the litigant to enforce the contract. *Id.* at 1128 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).

A delegation clause is effectively a second arbitration agreement in which the parties agree to arbitrate threshold issues concerning the interpretation or scope of a primary arbitration agreement. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). "[T]he question 'who has the . . . power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Kramer*, 705 F.3d at 1128 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options*, 514 U.S. at 944 (citation modified). Where it is clear that the parties have agreed to delegate questions of arbitrability to an arbitrator, the Federal Arbitration Act requires federal courts to enforce that delegation. *Rent-A-Center, W., Inc.*, 561 U.S. at 70.

Olson argues that the contractual language in the arbitration agreement "expressly limits the power to invoke the arbitration agreement to Mr. Olson and the dealership and to no one else," so when he signed the arbitration agreement with the dealership, Olson did not also agree to arbitrate with FCA. For that reason, he argues, FCA cannot force him to arbitrate anything with it under the agreement,

including the question of arbitrability. FCA responds that because the arbitration agreement contains a delegation clause that delegates the resolution of questions about the agreement's scope to an arbitrator, a court cannot decide who can enforce the agreement and instead must send that question to arbitration.

We agree with Olson that FCA may not compel him to arbitrate. With limited exceptions, non-parties to an arbitration agreement cannot enforce the agreement's terms against a signatory. Olson never agreed to arbitrate with FCA, and no exceptions to the general rule that only parties to an arbitration agreement can enforce it apply here.

**A.**

The dispute here is similar to that in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013). In *Kramer*, Toyota faced a class-action lawsuit from car owners and lessees who alleged defects in braking systems that Toyota had manufactured. *Id.* at 1124. The plaintiffs had signed arbitration agreements with automobile dealerships, and those agreements contained delegation clauses. *Id.* at 1124-25. Toyota argued that, because the arbitration agreements between the plaintiffs and the dealerships contained delegation clauses, an arbitrator should decide whether a nonsignatory to the arbitration agreement (such as Toyota) could compel the plaintiffs to arbitrate their claims. *Id.* at 1127.

We examined the language of the arbitration agreements, observing that, although the plaintiffs had agreed to delegation clauses that would send questions about arbitrability of disputes with the dealerships to arbitration, "the terms of the arbitration clauses [we]re expressly limited to Plaintiffs and the Dealerships." *Id.* We held that the

agreements therefore did not contain "clear and unmistakable evidence" that the plaintiffs agreed to arbitrate arbitrability with third parties such as Toyota. *Id.* We accordingly concluded that it was the courts (and not an arbitrator) that had the authority to decide whether the dispute over alleged defects in the cars' braking systems was arbitrable. *Id.*

The terms in Olson's arbitration agreement likewise expressly limit the agreement to him and the dealership (and its employees, agents, successors, or assigns, none of which FCA claims to be). The agreement reads:

> • *You or we* may choose to have any dispute *between us* decided by arbitration, and not by a court or by jury trial.
>
> . . . .
>
> At *your or our election*, any claim or dispute in contract, tort, statute, or otherwise *between you and us* or our employees, agents, successors or assigns . . . is to be decided by neutral, binding arbitration. Also, to the extent allowed by law, the validity, scope, and interpretation of this Arbitration Agreement is to be decided by neutral, binding arbitration.

Under *Kramer*, Olson's arbitration agreement lacks "clear and unmistakable evidence" that Olson agreed to arbitrate arbitrability with a third party such as FCA. 705 F.3d at 1127. Rather, the best reading of the agreement is that it delegates to an arbitrator threshold issues regarding the arbitrability of disputes *between Olson and the dealership*, if

either Olson or the dealership chooses to invoke arbitration. Nothing in the text of the arbitration agreement hints that third parties can enforce it.

FCA argues, however, that the Supreme Court's decision in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019), has effectively overruled *Kramer*. According to FCA, *Henry Schein* instructs that if a court concludes that a party has entered into any valid arbitration agreement that contains a delegation clause, the court must send all questions about the scope of that agreement to an arbitrator, regardless of the identity of the party invoking the delegation clause. FCA misreads *Henry Schein*.

*Henry Schein* involved a dispute between a dental equipment distributor, Archer and White, and a successor in interest to a dental equipment manufacturer, Henry Schein Inc. ("Schein"). *Id.* at 65-66. The equipment manufacturer had entered into a contract with Archer and White containing an arbitration clause that, by adopting the arbitration rules of the American Arbitration Association, incorporated a delegation provision. *Id.* The arbitration clause specified, however, that actions seeking injunctive relief were not subject to arbitration. *Id.* at 66. Archer and White sued Schein, alleging violations of federal and state antitrust law and seeking damages and injunctive relief. *Id.* Schein moved to compel arbitration, but Archer and White objected, arguing that the arbitration agreement barred arbitration of disputes seeking injunctive relief, even if such disputes also sought damages. *Id.* Schein responded that the delegation provision in the arbitration agreement meant that an arbitrator, and not the court, had to decide whether the arbitration agreement applied to the lawsuit. *Id.* The question in the case was: who decides whether the antitrust

dispute is subject to arbitration, the arbitrator or the courts? *Id.*

Some circuits had recognized an exception to the general rule that delegation clauses must be enforced, allowing a court to resolve arbitrability questions itself when the court determined that the defendant's argument for arbitration was wholly groundless. Invoking that exception, the district court in *Henry Schein* held that it could resolve the arbitrability question, despite the delegation clause, because Schein's argument for arbitration was wholly groundless. *Id.* at 67. The Fifth Circuit affirmed. *Id.* The Supreme Court reversed, holding that the "wholly groundless" exception was inconsistent with the Federal Arbitration Act and with Supreme Court precedent. *Id.* at 68. The Supreme Court treated as undisputed that Schein was a party to the contract as a successor in interest[1] and instructed that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.*

In FCA's view, "*Henry Schein* teaches that [if a valid delegation clause exists] the analysis stops, the court has no power to proceed, and the court must send [the question of

---

[1] Although Henry Schein was not an original signatory to the contract containing the arbitration agreement at issue in the case, the Supreme Court treated Henry Schein as equivalent to a party to the contract. *See Henry Schein*, 586 U.S. at 66 ("The relevant contract between the parties provided: ¶ '*Disputes*. . . . Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of [Schein]), shall be resolved by binding arbitration.'" (alteration inserting "[Schein]" in original)).

arbitrability] to arbitration." But contrary to FCA's argument, *Henry Schein* does not create an exception to the general rule that only the parties to an arbitration agreement can enforce it. Again, in *Henry Schein*, it was undisputed that Schein was effectively a party to the arbitration agreement containing the delegation clause. Because the Court in *Henry Schein* was not asked to consider whether a delegation clause requires delegating the arbitrability question to an arbitrator when there is *not* a valid arbitration agreement between the party moving to compel arbitration and the party it is seeking to compel to arbitrate, *Henry Schein* does not abrogate *Kramer*.

Concluding otherwise would lead to absurd results. FCA's reading of *Henry Schein* would mean that delegation clauses could be enforced even by third parties who have no connection whatsoever to the underlying arbitration agreement. For example, FCA's argument suggests that FCA could locate an arbitration agreement with a delegation clause that Olson entered with his cell phone provider, use that agreement to move to compel arbitration of the present automobile dispute, and thereby force a court to send the case to an arbitrator to let the arbitrator decide whether the cell phone arbitration agreement covered the automobile dispute. That cannot be right. FCA's theory would force plaintiffs to arbitrate the arbitrability of their claims against a theoretically limitless universe of defendants with whom they have never agreed to arbitrate, which would undermine the "fundamental principle that arbitration is a matter of contract," *Rent-A-Center*, 561 U.S. at 67, and the "first principle" that "[a]rbitration is strictly a matter of consent," *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) (alteration

in original) (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019)).[2]

## B.

FCA argues that, even if it cannot enforce the delegation clause in Olson's arbitration agreement, we should compel Olson to arbitrate his dispute with FCA. FCA offers two alternative reasons: (1) under the plain language of the arbitration agreement between Olson and the dealership, FCA can compel arbitration of Olson's claims; or (2) FCA

---

[2] FCA contends that our sister circuits have concluded otherwise. But none of the cases FCA relies on support that proposition. Several of the cases are distinguishable because the third-party nonsignatories to the arbitration agreements, who were seeking to enforce delegation clauses, were either successors or assignees of a signatory to the arbitration agreements. *See Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 470 (1st Cir. 1989) (involving a nonsignatory that was assigned the rights of the signatory under the contract that contained the arbitration agreement); *Contec Corp. v. Remote Sol., Co. Ltd.*, 398 F.3d 205, 207 (2d Cir. 2005) (involving a nonsignatory that was effectively the successor organization to the signatory as the result of corporate reorganization); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1099 (8th Cir. 2014) (involving a nonsignatory that was effectively an assignee of the original signatory). The remainder of the cases FCA cites either do not actually address the question of third parties' enforcement of delegation clauses or apply waiver or forfeiture doctrines to allow enforcement of delegation clauses. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 n.1 (6th Cir. 2020) (noting that the question whether a nonsignatory could enforce a delegation clause was not before the court); *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021) (noting that the plaintiff failed to specifically challenge the nonsignatory defendant's power to enforce the delegation clause); *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355-56 (6th Cir. 2022) (noting that the plaintiff failed to challenge the enforcement of the delegation clause with enough specificity).

can use equitable estoppel to compel Olson to arbitration. Both theories fail.[3]

**1.**

FCA argues that the plain language of the arbitration agreement covers Olson's claims about the alleged headrest defect. FCA points to language in the arbitration agreement stating that it "covers 'any' claim related to 'any related transaction or relationship.'" FCA argues that because Olson obtained the vehicle through the lease agreement containing the arbitration agreement, his claims about the vehicle necessarily are "related" to a transaction or relationship covered by the lease agreement. That argument ignores the rest of the text of the agreement, which limits its application to claims or disputes between "you" (*i.e.*, Olson) and "us or our employees, agents, successors or assigns" (*i.e.*, the dealership and its employees, agents, successors, or assigns). Again, FCA does not claim to be an employee, agent, successor, or assign of the dealership. The plain language of the agreement therefore does not require Olson to arbitrate any claims with FCA.

**2.**

Equitable estoppel prevents a person from enforcing only the parts of a contract that are beneficial to him while disclaiming the less desirable parts of that contract. *Kramer*, 705 F.3d at 1128. FCA argues that Olson would not have any claims against it "but for the lease contract that contains

---

[3] Before the district court, FCA also argued that it could enforce the arbitration agreement as a third-party beneficiary to the lease agreement, but the district court disagreed. FCA did not renew that argument in its opening brief on appeal, so we consider it forfeited. *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018).

the arbitration agreement," so FCA can use equitable estoppel to compel Olson to arbitrate his claims.

Because the parties agree that California law governs the lease agreement, we look to California law to determine whether FCA can use equitable estoppel to compel Olson to arbitrate. *See id.* (noting that we generally look to state contract law to determine whether third parties can enforce arbitration agreements). In *Ford Motor Warranty Cases*, 17 Cal. 5th 1122 (2025), the California Supreme Court clarified the governing California law framework for determining when a third party can use equitable estoppel to compel arbitration under an agreement to which it was not a signatory. Under that framework, FCA's equitable estoppel argument plainly fails.

In *Ford Motor Warranty Cases*, the plaintiffs brought product defect claims against Ford, alleging that Ford had violated its own express and implied warranties and engaged in fraudulent concealment in its manufacture of certain vehicles. *Id.* at 1125-26. Much like FCA in this case, Ford sought to compel the plaintiffs to arbitrate their claims by invoking arbitration clauses in sales contracts that the plaintiffs had signed with third-party automobile dealerships. *Id.* at 1126. Ford argued that because all warranties derive from the sale of goods, the plaintiffs' warranty claims were necessarily intertwined with the sales contracts the plaintiffs had signed with dealerships, and that by bringing warranty claims, the plaintiffs were trying to enforce beneficial terms of the sales contracts. *Id.* at 1126, 1133. Ford argued that equitable estoppel therefore allowed it to compel the plaintiffs to arbitrate under the arbitration clauses in those sales contracts. *Id.* at 1130.

The California Supreme Court rejected Ford's argument, holding that Ford, as a third party, could not enforce the contracts' arbitration clause.[4]  The court first recognized the general rule that only parties to a contract can enforce the contract's terms, and that Ford was not a party to the sales contracts.  It also observed that the arbitration agreement did not by its own terms authorize third parties to enforce it.  *Id.* at 1128-30.  The court then acknowledged that third parties can, in limited circumstances, use equitable estoppel to compel a plaintiff to arbitrate where "a plaintiff sues a third party to assert a claim that is 'intimately founded in and intertwined with' a contractual provision" in a contract including an arbitration clause.  *Id.* at 1126 (quoting *Metalclad Corp. v. Ventana Env't Org.'l P'ship*, 1 Cal. Rptr. 3d 328, 337 (Ct. App. 2003)); *see also id.* at 1131.  The court explained, however, that the plaintiffs' warranty claims arose under the Song-Beverly Consumer Warranty Act and other statutes "separate and apart from the [sales] contracts," *id.* at 1133 (quoting *Yeh v. Superior Court*, 313 Cal. Rptr. 3d 288, 295 (Ct. App. 2023)), and that "[e]ven though a buyer may receive a manufacturer's warranty because it bought a manufacturer's car from a dealer, 'nothing in the California Uniform Commercial Code suggests that this automatically makes the manufacturer's warranty a part of the sale contract between the buyer and the dealership,'" *id.* at 1134 (quoting *Davis v. Nissan N. Am.,*

---

[4] In *Ford Motor Warranty Cases*, the arbitration clause read: "[a]ny claim or dispute . . . which arises out of or relates to your credit application, purchase, or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who did not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration."  17 Cal. 5th 1122, 1127 (2025) (first alteration in original).

*Inc.*, 319 Cal. Rptr. 3d 517, 531 (Ct. App. 2024)). Because the plaintiffs' product defect claims were not founded in or intertwined with any contractual provision in the sales contracts, Ford could not compel the plaintiffs to arbitrate through equitable estoppel. *Id.* at 1138.

FCA's argument for why it should be able to use equitable estoppel to enforce the arbitration agreement in Olson's lease—that Olson would not have claims against FCA if he had not leased the car—is exactly the type of argument the California Supreme Court rejected in *Ford Motor Warranty Cases*. Like the plaintiffs in *Ford Motor Warranty Cases*, none of Olson's claims are founded in or intertwined with the terms of the lease agreement. Rather, Olson's claims rely on rights created by California statutes and by a warranty provided directly by FCA.[5] Thus, under *Ford Motor Warranty Cases*, FCA cannot use equitable estoppel to enforce the arbitration agreement in Olson's lease.

## IV.

For the foregoing reasons, we affirm the district court's denial of FCA's motion to compel arbitration.

---

[5] Olson asserted claims under the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq.; California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792, 1791.1, 1794 et seq.; and Breach of Express Warranty under state common law. Olson's breach of express warranty claim is based on FCA's manufacturer warranty, and not on any warranties appearing in the lease agreement itself.